S97A1618, S97X1619. HALL v. TRUBEY; and vice versa.
(498 SE2d 258)

HINES, Justice.

This is an appeal from the superior court's application of laches to bar plaintiff Hall from injunctive and other relief in this dispute between adjacent landowners over the construction and placement of two manufactured homes on land in Putnam County. See OCGA §§ 9-3-3; 23-1-25. The cross-appeal is defendant Trubey's challenge to the denial of a motion to dismiss for failure to join Putnam County as an indispensable party to the action. See OCGA § 9-11-19 (a). For the reasons which follow, we affirm the superior court's refusal to dismiss the suit, but reverse the court's determination that the plaintiff

is precluded from relief by the equitable doctrine of laches.

Hall owned Lot 8 in a subdivision in Putnam County, which she leased to her family-owned cable television business. In the summer of 1995, Trubey began preparations to purchase adjacent Lot 7. Both Lots 7 and 8 were zoned for commercial use.[1] In August 1995, Trubey negotiated for the purchase of two double-wide mobile homes, which she intended to place on Lot 7 and to lease as residences.[2] Also in August 1995, Trubey applied for and received various building and construction permits. Trubey purchased Lot 7 in September 1995. She then transferred her interest in the real estate to a trust, but retained the authority to develop and control the property.

In the fall of 1995, Hall discovered Trubey's intended use of Lot 7 and began to voice objections. Hall's business required constant use of trucks and heavy equipment, and Hall was concerned that the proposed residential development next to her business would pose security and safety risks from people coming onto her property. Hall contacted her attorney, who shortly thereafter telephoned the attorney for Putnam County and expressed Hall's concerns about Trubey's plan for Lot 7. On October 20, 1995, Hall's counsel wrote to the county attorney again protesting Trubey's proposed use of the property as violative of subdivision requirements and zoning ordinances, and submitting that Trubey's attempt to create a multiple residential use lot would require a hearing before the planning commission. A copy of the letter was forwarded to Trubey's counsel. At the time of this correspondence, Trubey had made no significant improvements to Lot 7. Over the next few months, Hall continued to make her objection known to Trubey, at one point offering to purchase Trubey's property. Trubey was issued an on-site building inspection permit in November 1995.

Hall expended in excess of $10,000 for fencing and lighting on her business property out of concern about impact from the development of Trubey's lot, and on February 19, 1996, Hall's counsel telephoned Trubey's attorney to inform him that Hall intended to file a complaint seeking a temporary restraining order. Trubey's attorney was going on vacation and indicated that he would like to be at the hearing. Hall's counsel waited ten days to file the complaint, explaining that he did so out of professional courtesy.

The hearing on the temporary restraining order was held on March 1, 1996. As of that date, payment had not been made for the two mobile homes and title to them had not passed to Trubey or to the trust which owned the real estate. At the close of the hearing, the

---

[1] The lots were designated C-1 under the Putnam County Zoning Ordinance.

[2] Lot 7 already contained a wooden structure which Trubey also planned to lease as a residence.

superior court declined to issue a temporary restraining order; however, the court expressly cautioned Trubey that the case was not decided and that Trubey would be proceeding at her own risk. Trubey then filed numerous motions, including the unsuccessful motion to dismiss for non-joinder. Following a final hearing in the matter on January 23, 1997, the superior court declined to enjoin Trubey from further proceeding with the development of Lot 7 based on its findings that Trubey had complied with all the administrative requirements for application and receipt of necessary permits and that the action was not filed until essentially all of the lot preparation and construction work had been completed and Trubey had expended approximately $70,000 on the project.[3] The court concluded that it would be "inequitable" and "unjustly disruptive" to grant the relief sought by Hall.

1. A court of equity may bar a complaint based on laches when the lapse of time and the claimant's neglect in asserting rights results in prejudice to the adverse party. Whether laches should apply depends on a consideration of the particular circumstances, including such factors as the length of the delay in the claimant's assertion of rights, the sufficiency of the excuse for a delay, the loss of evidence on disputed matters, the opportunity for the claimant to have acted sooner, and whether the claimant or the adverse party possessed the property during the delay. *Troup v. Loden,* 266 Ga. 650, 651 (1) (469 SE2d 664) (1996). This is so because laches is not merely a question of time, but principally the question of the inequity in permitting the claim to be enforced. *Yablon v. Metropolitan Life Ins. Co.,* 200 Ga. 693, 708 (2) (38 SE2d 534) (1946).

Here, a consideration of the circumstances compels the conclusion that the superior court abused its discretion in applying the doctrine of laches to bar Hall's claims. *Mountain Manor Co. v. Greenoe,* 205 Ga. 619, 621 (1) (54 SE2d 629) (1949). Although Hall waited some months after she learned of the proposed development to initiate formal legal proceedings, Hall promptly asserted her objections as soon as she discovered that Trubey intended to use her commercially-zoned property for residential purposes, and before Trubey incurred any significant expense to develop her lot. Hall did not remain silent, but expressed her specific concerns to Trubey and her agents, and attempted an out-of-court resolution of the dispute. There was no requirement that Hall leap into litigation in order to preserve her rights and remedies. See *King v. Baker,* 214 Ga. App.

---

[3] Hall maintains that Trubey had not yet begun to clear the lot or to install the manufactured homes until after the February 19 conversation between counsel at which time Trubey became aware that legal action was imminent; however, the record is unclear on this point.

229, 232 (3) (447 SE2d 129) (1994).

Trubey urges that evidence of the condition of the property has been lost due to the fact that Hall waited until after the lot had been cleared and the homes were in place. However, the record does not demonstrate that the delay in filing suit resulted in the loss of evidence on any *disputed* matter. Trubey also points to the facts that she sought the advice of county officials and received various permits from the county prior to Hall's instituting legal action, and that by the time this action was instituted, Trubey had nearly completed the construction of her two homes and had incurred over $70,000 in expenses. However, the county's initial sanction did not necessarily establish the validity of Trubey's development nor raise an estoppel to its challenge. *Matheson v. DeKalb County*, 257 Ga. 48, 49 (3) (354 SE2d 121) (1987). And the fact that Trubey continued with the project in the face of Hall's continuing attempts to block it and with the knowledge that Hall would take legal action to stop it militates against Trubey on the equitable claim of laches. *McClure v. Davidson*, 258 Ga. 706, 709 (2) (373 SE2d 617) (1988). As the trial court admonished Trubey, she proceeded at her own risk.

2. In determining if a party is indispensable, it is essential to consider whether relief can be afforded the plaintiff without the presence of the other party, and whether the case can be decided on its merits without prejudicing the rights of the other party. *Pickett v. Paine*, 230 Ga. 786, 796 (4) (a) (199 SE2d 223) (1973). Under this analysis, Putnam County is not an indispensable party to the action because the primary relief requested by Hall, removal of the two manufactured homes and compensation for any damage, can be granted without the presence of Putnam County and because it has not been shown that any rights of Putnam County will be prejudiced by its absence. Moreover, a court is to allow a reasonable time for an absent indispensable party to be joined before granting a motion to dismiss for nonjoinder. *Guhl v. Tuggle*, 242 Ga. 412 (1) (249 SE2d 219) (1978); *Dismuke v. Stynchcombe*, 237 Ga. 420, 421 (4) (228 SE2d 817) (1976). See also *Altama Delta Corp. v. Howell*, 225 Ga. App. 78, 80 (3) (483 SE2d 127) (1997). Thus, it was not error to deny Trubey's motion to dismiss the suit because Putnam County was not named as a party.

*Judgment affirmed in Case No. S97X1619 and reversed in Case No. S97A1618. All the Justices concur.*

DECIDED FEBRUARY 23, 1998 —
RECONSIDERATION DENIED MARCH 13, 1998.

*Blasingame, Burch, Garrard, Bryant & Ashley, William S.*

*Ashley, Jr., Lloyd N. Bell,* for appellant.
*Huskins & Huskins, Donald W. Huskins,* for appellee.