A91A1144. BRANNEN v. GULF LIFE INSURANCE COMPANY.
(410 SE2d 763)

BIRDSONG, Presiding Judge.

Dannis D. Brannen appeals the order of the trial court granting appellee Gulf Life Insurance Company's (Gulf) motion for summary judgment and, in effect, denying partial summary judgment to appellant.

Appellant applied for a $30,000 life insurance policy to be paid

up at age 95. The policy was issued on December 1, 1970, with an age at issue date of 26. Appellant subsequently applied for a duplicate policy asserting the original policy had been lost or destroyed. During the first week of June 1984, appellee issued a so-called duplicate policy for $30,000 life insurance to be paid up at age 95 to appellant with a policy issue date of December 1, 1970, and an age at issue date of 26. Appellant paid the same premium both prior to and after issuance of the duplicate policy. On September 6, 1989, appellant surrendered the duplicate policy to appellee exercising the cash surrender value option of the insurance contract. At this time, it was discovered that the so-called duplicate policy contained a table of guaranteed values based on an ordinary life policy rather than a policy with premiums paid up at age 95. Thereafter, appellees refused to pay the cash surrender value of $7,381.50, which apparently is the applicable cash surrender amount based on a table of guaranteed values calculated for an ordinary life policy and tendered to appellant $5,969.70, which apparently is the applicable cash amount based on a table of guaranteed values (as found in the original policy) calculated for a policy with premiums paid up at age 95. *Held*:

1. In Georgia, life insurance contracts, such as in this case, must be in writing. *Georgia Cas. &c. Co. v. Hardrick*, 211 Ga. 709, 712 (3) (88 SE2d 394); see *Thomas v. Union Fidelity Life Ins. Co.*, 168 Ga. App. 267, 268 (1) (308 SE2d 609), aff'd 252 Ga. 259 (312 SE2d 333); OCGA §§ 33-24-1 (1); 33-24-16; 33-24-18 (a); 33-25-1; 33-25-3; 33-25-3.1.

2. Examination of the so-called duplicate policy reveals that it is ambiguous on its face regarding whether it was to constitute a "new" policy. Although the policy is stamped as a "DUPLICATE," it contains a typewritten provision which provides: "This policy has been issued as a result of the loss or destruction of the original contract. Effective as of this date, this policy *shall take the place of the original* and the previously issued policy shall be *void.*" (Emphasis supplied.) Between the "DUPLICATE" stamp and the detailed typewritten language, the latter is entitled to the most consideration. See OCGA § 13-2-2 (7). Insurance contract provisions are to be construed against the insurer which drafted them (*Southern Guaranty Ins. Co. v. Goddard*, 259 Ga. 257, 259 (379 SE2d 778)), and " ' " '[w]here a provision in a policy is susceptible to two or more constructions, the courts will adopt that construction which is most favorable to the insured.' " ' " *Atlantic Wood Indus. v. Lumbermen's &c.*, 196 Ga. App. 503, 505 (2) (396 SE2d 541). Applying these rules of construction, we find the so-called duplicate policy was a "new" policy. The original insurance policy clearly and unequivocally was rendered "void" by the express provisions of the second policy. As the life insurance contract was required to be in writing (Division 1 above), by rendering

the original policy void in its totality, the original contract of insurance likewise was rendered void.

Further, the new policy was grounded upon valuable consideration. The new policy granted the insured the benefit of the original issue date and the original age of insured at date of issue; thus, the insured was granted the benefit of having a new policy that carried the rights and benefits of a policy issued on December 1, 1970, for an insured of only age 26 and for an unchanged premium. In return the insured, by accepting the terms of the policy as evidenced in the record by his subsequent payment of the premiums, agreed, *as proposed by the insurer*, to the voiding of the original policy, that is the original life insurance agreement. An additional legal effect of the insured's acceptance of the new policy is that he has made, as clearly bargained for by the insurer, a present implied promise to the forbearance of any future claims or benefits arising from the original policy. OCGA §§ 13-3-41; 13-3-42.

Thus, to the extent the trial court held that the so-called duplicate policy was not a "new" contract or that there was "no consideration flowing" which would authorize the finding that a new policy had been entered into by the parties, it is in error.

3. There remains to be considered whether the parties intended the terms of the new policy would include any provision materially different from those contained in the original policy. As to this issue we find no ambiguity of contract. Examining the "new" insurance contract on its face, we find it to be clear and unmistakable the parties intended, as concluded by the trial court, that the "new" contract would contain the same contract provisions as the original contract "with the same rights and obligations applicable to both parties." Such an intent violates no rule of law in this state. Therefore, enforcing this intent as we are required to do under the provisions of OCGA § 13-2-3, we find that both parties also intended to include the same table of guaranteed values found in the original policy within the terms of the "new" policy.

"A mistake, either of law or fact, is cognizable in equity and affords a remedy therein by reformation of the instrument so as to make it express the true intention of the parties, on a proper cause being made; but such a jurisdiction will always be cautiously exercised, and to justify it the evidence must be clear, unequivocal, and decisive. [Cits.] 'Mistake relievable in equity is some unintentional act, or omission, or error, arising from ignorance, surprise, imposition, or misplaced confidence.' . . . For a mistake to be relievable in equity by reformation, it must be mutual, or else mistake on the part of one to the contract and fraud on the part of the other. [Cits.]" *Yablon v. Metropolitan Life Ins. Co.*, 200 Ga. 693, 704 (2) (38 SE2d 534). Due to an initial negligence mistake of the insurer, a different table of

guaranteed values than that intended by both parties was incorporated into the "new" policy. And thereafter laboring under the same misconception, insurer and insured both harbored the same mistake that the same table of guaranteed values had been incorporated into the "new" insurance policy. As the mistake was one common to both parties, that is both parties were laboring under the same misconception (see *DeLong v. Cobb*, 215 Ga. 500, 503 (111 SE2d 89), overruled on other grounds, *Long v. Walls*, 226 Ga. 737, 742 (177 SE2d 373); *Weil Bros.-Cotton v. T. E. A.*, 181 Ga. App. 122, 127 (1) (351 SE2d 670); *B. L. Ivey Constr. Co. v. Pilot Fire &c. Co.*, 295 FSupp. 840, 844 (3, 4) (N.D. Ga.)) and as this common mistake existed at the time of the execution of the "new" contract of insurance (*DeLong v. Cobb*, supra at 503), it was mutual rather than unilateral.

4. As a general rule, "[i]f a party, by reasonable diligence, could have had knowledge of the truth, equity should not grant relief. . . ." OCGA § 23-2-29. However, this provision has a statutory exception promulgated in OCGA § 23-2-32 (b). *Gulf Life Ins. Co. v. Folsom*, 256 Ga. 400, 403 (349 SE2d 368). OCGA § 23-2-32 (b) provides "[r]elief may be granted even in cases of negligence by the complainant if it appears that the other party has not been prejudiced thereby." *Long v. Walls*, supra. In this case, we find appellant rather than being prejudiced by the negligence of appellee stands, in fact, to obtain a windfall not bargained for absent the equitable remedy of reformation.

*Yablon*, supra, and *Davis v. United American Life Ins. Co.*, 215 Ga. 521 (111 SE2d 488) are factually distinguishable.

Accordingly, we find the trial court did not err in denying appellant's motion for partial summary judgment. Moreover, pursuant to OCGA §§ 23-2-30 and 23-2-32 (b), the trial court was authorized to grant reformation of contract; and, having granted reformation, the trial court did not err in granting appellee's motion for summary judgment and, upon reformation, dismissing appellant's complaint with prejudice. We will not reverse the correct rulings of a trial court regardless of the reasons given therefore. *National Consultants v. Burt*, 186 Ga. App. 27, 33 (2) (366 SE2d 344). Appellant's other assertions are without merit.

*Judgment affirmed. Pope and Cooper, JJ., concur.*

DECIDED SEPTEMBER 5, 1991 —
RECONSIDERATION DENIED SEPTEMBER 19, 1991 —

*Joseph D. McGovern*, for appellant.
*Newton, Smith, Durden & Kaufold, Wilson R. Smith*, for appel-

lee.

