## A97A1318. LPS CONSTRUCTION COMPANY, INC. v. GEORGIA DEPARTMENT OF DEFENSE et al.
(491 SE2d 920)

BLACKBURN, Judge.

LPS Construction Company, Inc. (LPS) brought the underlying

action for breach of the implied duty of good faith and fair dealing and quantum meruit seeking to recover $75,000 from the defendants, Georgia Department of Defense (DOD) and the Georgia Department of Administrative Services (DOAS). LPS appeals the trial court's order granting the defendants' motion for summary judgment.

"On appeal from the grant of a motion for summary judgment, we review the record de novo to determine if the moving party has demonstrated there is no genuine issue of material fact and the undisputed facts, construed in a light most favorable to the non-moving party, warrant judgment as a matter of law. *Gentile v. Bower*, 222 Ga. App. 736, 737 (477 SE2d 130) (1996)." *Sagon Motorhomes v. Southtrust Bank of Ga.*, 225 Ga. App. 348, 349 (484 SE2d 21) (1997).

In accordance with the State Purchasing Act, OCGA § 50-5-50 et seq., the DOAS invited sealed bids for the construction of a project at Fort Stewart, Georgia, on behalf of the DOD.[1] The bid package contained a proposal form which stated: "Prior to the bid opening date and hour, errors may be stricken or revisions may be made and corrections entered on this proposal form, provided that any such strikeover or revision is signed in ink by the person signing the bid or his agent. *Any revisions made on the outside of the envelope will not be accepted.*" (Emphasis supplied.) The "Instructions to Bidders" stated that "[t]he Owner reserves the right to reject any or all bids and to waive any technicalities and informalities."

LPS submitted a timely, signed, and sealed bid on the form required, offering a total contract price of $2,628,100. LPS' president signed the proposal form, but it is undisputed that he did not read the proposal form. On the outside of the bid envelope, there was a handwritten notation which stated, "Alternate #6 Add 68,000.00 — Base Bid Add 7,000.00." The handwritten notation was not signed or initialed. LPS contends that it received a last minute bid from one of its subcontractors which necessitated the revision on the bid envelope. LPS had estimated what the subcontractor would bid and that estimation was on the signed and sealed bid. As the subcontractor's official bid was received only one minute before bid opening, LPS' agent did not have time to make the revisions required by the bid rules.

On September 29, 1995, the DOAS accepted LPS' offer by furnishing a purchase order awarding the contract to LPS in the amount of $2,628,100. DOAS regulations provide, "[a] written Purchase Order furnished to the successful bidder/offeror within the time specified in the solicitation document results in a binding con-

---

[1] The trial court's rendition of the facts is supported by the record, and we adopt them with minor additions.

tract without further action by either party." Therefore, a binding contract was formed as of the time the DOAS accepted LPS' bid.

By letter dated October 10, 1995, LPS' president requested that the DOD and DOAS waive compliance with the "technicality on the Bid Proposal Form relating to revisions on the envelope." The president's letter further stated: "I therefore respectfully request that the technicality of no revisions on the envelope be waived and the contract amount be adjusted to $2,703,100. Whatever your decision, I do fully intend to honor my obligation to the Department of Defense regardless of the financial hardship I may face." By letter dated October 11, 1995, the DOAS denied LPS' request for a waiver.

On October 19, 1995, LPS' president signed, "under protest," a copy of a formal contract memorializing the September 29, 1995 agreement. Specifically, LPS added the following statement to the signature line: "Signed under Protest as Final Contract Price Subject to Outcome of Lawsuit filed 10/19/95."

1. In Count 1 of its amended complaint, LPS contends that "LPS intended for its bid to include the $75,000.00 in envelope revisions" and that defendants either knew or should have known that LPS' bid included the $75,000. However, LPS' intent to include the envelope revisions is irrelevant considering the clear instructions that no envelope revisions would be considered. LPS' bid was for the amount stated on the bid form and the defendants' acceptance of the bid created a binding contract for the amount bid. See cf. *Southeast Grading v. City of Atlanta*, 172 Ga. App. 798, 800 (2) (324 SE2d 776) (1984) (communication of acceptance of offer forms bilateral contract). Nothing further needed to be signed for a binding contract. Therefore, LPS' later attempt to change the contract price by signing the formal contract "under protest" was to no avail, as the contract was formed upon the DOAS' acceptance of its bid.

LPS contends that someone in the bid room who worked with DOD waived the requirement that envelope revisions would not be considered. For this contention, LPS relies on hearsay testimony that an unidentified person claiming to work with the DOD said, "[w]ell, I'm with the Department of Defense, and the federal government does it all the time. I'm sure it's all right." Initially, we note that hearsay has no probative value in summary judgment proceedings unless it is part of the res gestae. See *Real Estate Intl. v. Buggay*, 220 Ga. App. 449, 451 (1) (469 SE2d 242) (1996). Further, LPS' contention that it relied on such hearsay statement is belied by its later letter requesting a waiver.

LPS further contends that the day after its bid was submitted, DOD agents represented that the "technicality" regarding the envelope revisions would be waived. Furthermore, a DOD agent deposed that he had told LPS' president that the envelope revisions would be

considered. However, on the day after bid opening, a DOAS representative informed LPS' president that the envelope revisions would not be accepted. And again, LPS' letter requesting a waiver of the specific bid requirement makes it clear that neither DOAS nor DOD had previously waived such requirement. Furthermore, LPS assured the DOD and the DOAS that it would abide by their decision as to whether the envelope revisions would be accepted.

LPS cites *First Baptist Church of Moultrie v. Barber Contracting Co.*, 189 Ga. App. 804 (377 SE2d 717) (1989) for the proposition that the DOD and DOAS should not be allowed to benefit from its mistake that was apparent from the face of its offer. In *First Baptist*, we held that equity will rescind a contract based upon a unilateral mistake. We determined that "[t]he prerequisites for obtaining such relief are: (1) the mistake is of such consequence that enforcement would be unconscionable; (2) the mistake must relate to the substance of the consideration; (3) the mistake must have occurred regardless of the exercise of ordinary care; (4) it must be possible to place the other party in status quo. It is also generally required that the bidder give prompt notification of the mistake and his intention to withdraw." (Citations and punctuation omitted.) Id. at 807-808. The facts in *First Baptist* dealt with a miscalculation. In the present case, however, LPS submitted a proper bid. Its only mistake was in its failure to read and abide by the bid requirements. Therefore, our holding in *First Baptist* is inapplicable to the present case.

2. LPS' final theory of recovery sounds in quantum meruit. LPS asserts that it is entitled to recover the $75,000 written on the face of the envelope because "[n]o state agency is allowed to take private property without due and adequate compensation." However, as a valid express contract exists LPS cannot recover in quantum meruit absent a breach of the contract by the DOAS or DOD. See *Classic Restorations v. Bean*, 155 Ga. App. 694 (272 SE2d 557) (1980) (where express contract in existence quantum meruit inapplicable); *Remediation Svcs. v. Ga.-Pacific Corp.*, 209 Ga. App. 427, 433 (433 SE2d 631) (1993) ("'one is estopped to recover on quantum meruit where there exists an express agreement'"). Therefore, summary judgment was properly granted to DOD and DOAS by the trial court.

*Judgment affirmed. Pope, P. J., and Johnson, J., concur.*

DECIDED SEPTEMBER 11, 1997.

*Griffin, Cochrane & Marshall, Melissa S. Harben, William H. Parkman*, for appellant.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Senior Assistant Attorney General, Isaac Byrd, Grace E. Lewis, Brenda H.*

*Cole, Robert S. Bomar, John B. Ballard, Jr., Assistant Attorneys General*, for appellees.